■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SAMMY FULTON, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Held, J.), rendered November 28, 1975, convicting him of attempted criminal possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress evidence, and the denial of defendant's motion for an *in camera* hearing with respect to the identity of an informant. By order dated August 10, 1981, this court (1) remitted the case to Criminal Term for the holding of an *in camera* hearing and the furnishing of a report to this court in accordance with the guidelines set forth in *People v Darden* (34 NY2d 177), and (2) directed that the appeal be held in abeyance in the interim (*People v Fulton*, 83 AD2d 798). Criminal Term has complied and rendered a report in accordance therewith. Judgment affirmed. Cohalan, O'Connor and Bracken, JJ., concur, Cohalan, J., and O'Connor, J., with separate memoranda; Gulotta, J. P., dissents and votes to reverse the judgment and dismiss the indictment, with a memorandum.

Cohalan, J. According to the prosecution, the reliable informant was a woman more than 80 years of age when, in 1973[*], she relayed the information that led to Fulton's arrest and ultimate plea of guilty. If living, she would now be almost 90 years old. The authorities made diligent efforts to ascertain the informant's whereabouts, without success. On remittal from this court (see *People v Fulton*, 83 AD2d 798) for the purpose of holding a *Darden* hearing (*People v Darden*, 34 NY2d 177, 181), Criminal Term closed the hearing upon learning of the nonproduction of the informant. It appears that by so doing, it was reading *Darden* as if it were an inflexible rule. Actually, as noted in *People v Huggins* (36 NY2d 827, 828): "The disclosure of an informer's identity at suppression hearings is a matter left to the sound but reviewable discretion of the hearing court * * * In the present case, though requested, such an inquiry was denied. In the circumstances disclosed in this record however, we cannot say that such denial was an abuse of discretion, especially since at the time the hearing court did not have the benefit of the guidelines subsequently announced in our opinion in *People v Darden*". In *People v West* (56 AD2d 995, 956), a post-*Darden* case involving a jury verdict convicting defendant of the crime of criminal possession of a controlled substance in the fifth degree, the

---

* When this matter was remitted to Criminal Term for the *Darden* hearing, this court was apparently unaware of the advanced age of the reliable informant.

court remarked: "Defendant next claims that the court erred in its refusal to reveal the identity of the informant to the defense. Such a disclosure at suppression hearings is a matter left to the sound but reviewable discretion of the hearing court (*People v Huggins,* 36 NY2d 827). At an *in camera* hearing held pursuant to the method enunciated in *People v Darden* (34 NY2d 177 * * *), several witnesses by their testimony emphatically established that the informant was not imaginary but real and that the information communicated to the police was not a fabrication." *People v West* was reversed (44 NY2d 656) on another ground (lack of probable cause), but no mention was made in the Court of Appeals opinion with respect to the *Darden* rule. In my view, the failure at bar to produce the informant was satisfactorily explained. If positive proof could be advanced that the informant was deceased, would *Darden* have to be slavishly followed? To paraphrase Cardozo, J., in *People v Defore* (242 NY 13), should the criminal go free because of circumstances beyond the People's control? Should a policeman bear the onus of the implied accusation that he is fabricating a story out of the whole cloth because of his inability to produce the informant? In this instance, the arresting officer would have had to possess the facile imagination of a Baron Munchausen to dream up the existence of an 80-year-old informant to buttress his case. As I see the situation, the *Darden* rule, if rigidly applied, will inevitably have a devastating effect on the prosecution of criminal cases, and the defense will be able to free many a guilty defendant if an informant cannot be produced. Bracken, J., concurs in the memorandum of Cohalan, J.

O'Connor, J. A suppression hearing pursuant to CPL article 710 was conducted in March, 1973. Two police officers testified to their grounds for arresting defendant, namely, their observations of him on the scene as well as a tip from a confidential informant regarding defendant's alleged possession of narcotics and a gun. Criminal Term denied defendant's request for production of the informant and denied the motion to suppress. Upon remission by this court while this appeal was held in abeyance, Criminal Term was informed by the People that the informant could not, despite their exhaustive good-faith efforts, be located for purposes of testifying *in camera* under the procedure set forth in *People v Darden* (34 NY2d 177). The People now purport to concede that since defendant has been "permanently deprived of his right to challenge the existence of the informant", he "has been deprived of his right to confrontation" and the judgment must be reversed. I disagree. Defendant's sole basis for appealing is that the arresting officers lacked sufficient cause for their actions absent the informant's tip; therefore, defendant reasons that the People's nonproduction of the informant for a *Darden* hearing deprived him of a fundamental right. I believe the inquisitorial procedure established by the Court of Appeals in *Darden* does not implicate defendant's right of confrontation. It is well established that hearsay evidence can suffice for a finding of adequate cause for police searches and seizures (see CPL 710.60, subd 4), and defendant was not precluded from challenging the informant's existence or the content of her tip through cross-examination of the officers testifying at the suppression hearing. All *Darden* established was a limited procedural right to *supplement* the suppression hearing procedure; therefore, lacking as it does any independent constitutional dimension, its frustration — particularly as in circumstances like these — does not require so drastic a remedy as reversal of defendant's conviction and the granting of the suppression motion. Therefore, I vote to affirm.

Gulotta, J. P. (dissenting). The evidence must be suppressed and the indictment dismissed, because of the People's inability to produce the alleged informant for the repeatedly scheduled *in camera* hearing (see *People v Darden,* 34 NY2d 177; cf. *People v Singleton,* 42 NY2d 466). While I sympa-

thize with the People's difficulty in producing the alleged informant after so many years, and commend the efforts made to find this person, suppression is nonetheless required. An *in camera* inquiry of an informant, in a case such as this, is necessary so as to insure the existence and identity of the informant, and to confirm that the informant passed along the information as testified to by the police officer. Without the informant's confirming testimony, the People have failed to adduce sufficient evidence to justify the seizure and frisk of the defendant. I note, in addition, that this is not a case in which the People have demonstrated that the informant would have been unavailable to testify at the time of the suppression hearing, and I am therefore assuming that but for the erroneous ruling of the motion court the testimony of the said informant could have been taken *in camera* at that time in accordance with the dictates of *People v Darden* (*supra*).