24-603-cr (L)
*United States v. Mack*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of November, two thousand twenty-five.

Present:

> SUSAN L. CARNEY,
> WILLIAM J. NARDINI,
> EUNICE C. LEE,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                          24-603-cr (L), 24-618 (Con)

JAMES MACK, AKA KIKO,

*Defendant - Appellant*.

---

| | |
|---|---|
| For Defendant-Appellant: | Jonathan I. Edelstein, Edelstein & Grossman, New York, NY. |
| For Appellee: | Adrian S. LaRochelle and Steven D. Clymer, Assistant United States Attorneys, *for* John A. Sarcone III, United States Attorney for the Northern District of New York, Syracuse, NY. |

Appeal from a judgment of the United States District Court for the Northern District of New York (David N. Hurd, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant James Mack appeals from a judgment of the United States District Court for the Northern District of New York entered on February 29, 2024, sentencing him to 180 months in prison, to be followed by 8 years of supervised release. This case arises from Mack's trafficking of cocaine and crack cocaine in Syracuse, New York. At a trial in October 2022, a jury found Mack guilty on three counts: (1) possessing with intent to distribute cocaine and cocaine base, in violation of 18 U.S.C. § 841(a)(1), (b)(1)(B), and (b)(1)(C); (2) possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (3) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Mack now appeals his convictions. We assume the parties' familiarity with the case.

## I.     *Franks* **Hearing Denial**

On February 11, 2020, the Syracuse Police Department ("SPD") obtained a warrant to search Mack's residence and vehicles after investigating Mack with the assistance of a confidential informant ("CI"). When executing the warrant the next day, the SPD found cocaine, crack, marijuana, a loaded .38 caliber Charter Arms revolver, and $2,900 in cash in a hidden compartment, or "trap," of a Honda Accord that was registered to Mack. After his indictment, Mack moved to suppress the evidence obtained during this search. In the course of the suppression proceeding, the district court denied Mack's request for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the veracity of statements about the CI's reliability in the affidavit supporting the search warrant. Mack now argues that this denial was in error.

2

To obtain a *Franks* hearing, "a defendant must make a substantial preliminary showing of (1) falsity, that a false statement was included by the affiant in the warrant affidavit, (2) knowledge, that the affiant made the allegedly false statement knowingly and intentionally, or with reckless disregard for the truth, and (3) materiality, that the allegedly false statement is necessary to the finding of probable cause." *United States v. Sandalo*, 70 F.4th 77, 85 (2d Cir. 2023).[1] When assessing probable cause in the absence of false statements, this Court requires a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. McKenzie*, 13 F.4th 223, 236 (2d Cir. 2021). We review a district court's "factual findings of falsity and knowledge for clear error and its determinations of materiality *de novo*." *Sandalo*, 70 F.4th at 86.

Here, the district court properly found that Mack failed to make a substantial preliminary showing that the affidavit supporting the search warrant contained false statements about the CI's reliability. After Mack was arrested, in a parallel prosecution he faced in New York state court, he obtained a hearing pursuant to *People v. Darden*, 34 N.Y. 2d 177 (1974), to challenge the existence and credibility of the CI. In a written report following the hearing, a judge stated that the CI first provided information to the SPD about illegal narcotics sales in August 2019. Mack claims that this finding contradicts the affidavit supporting the search warrant, because in his view the affidavit represented to the court that the CI was deemed credible based on controlled buys before August 2019. But that is not what the affidavit says. The affidavit, which was submitted on February 11, 2020, states that the CI "*has been verified* through prior police investigations which resulted in numerous controlled buys" and that the CI "*has been providing* investigative

---

[1] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

information to members of the [SPD] . . . for several months." Gov't App'x at 50 (emphasis added). This language suggests that the SPD had confirmed the CI's credibility by the date of the affidavit's submission in 2020. While the affidavit states that the investigation into Mack began upon receiving a tip from the CI in August 2019, it does not state that the SPD had deemed the CI credible from the outset of his cooperation.

Even if the affidavit could be read to falsely state that the CI had conducted controlled buys before August 2019, Mack still would not have been entitled to a *Franks* hearing. That is because even without the information provided by the CI, the affidavit would still have established probable cause to search Mack's apartment and vehicles; put another way, the allegedly false statements do not satisfy the materiality prong of *Franks*. *Sandalo*, 70 F.4th at 85. The affidavit details two instances in which the SPD oversaw the CI's controlled buys of cocaine from Mack. During these buys, the SPD saw Mack leave his apartment, get into his Honda Pilot, drive to the back of the parking lot in his apartment complex, park next to his Honda Accord, enter the Accord, reenter the Pilot, and drive away to the controlled buy. The affidavit also explains that the SPD followed Mack back to his apartment building after the first controlled buy, and contains other facts suggesting that the Accord was used as a "stash" for illicit drugs. Finally, the affidavit details Mack's multiple prior convictions for selling drugs. These statements alone would have provided probable cause to search Mack's apartment and vehicles. *Id.*

## II. Jury Note Response

During its deliberations, the jury sent a note asking to rehear testimony from two SPD officers, Detectives Robert Ripley and Christopher Cowan, who were involved in the investigation. Specifically, the note asked for "the testimony of [O]fficer Ripley concerning the order of events getting into the [A]ccord as well as Officer Cowan's testimony of his surveillance and the order of

4

events getting to the [A]ccord[,]" and for "clarity on the size of [the] trap[.]" Gov't App'x at 83. Before asking the parties for their views on the note, the district court responded by having the direct testimonies of Detectives Ripley and Cowan read to the jury. In a sidebar held immediately after doing so, the district court rejected Mack's request to also read back Detectives Ripley's and Cowan's cross-examinations by defense counsel. Mack now argues that the district court's response to the jury's note was both procedurally and substantively erroneous. We disagree.

Starting with Mack's procedural challenge, the district court substantially complied with the procedure for responding to jury notes set forth in *United States v. Ronder*, 639 F.2d 931 (2d Cir. 1981). This process entails (1) submitting the jury inquiry in writing; (2) marking the note as a court exhibit and reading it into the record in the presence of counsel and the defendant before the jury is recalled; (3) affording counsel an opportunity to suggest appropriate responses before the jury is recalled; and (4) after the jury is recalled and in the jury's presence, preceding the court's response, reading the content of any note concerning substantive inquiries into the record. *Id.* at 934. Here, the district court received the inquiry in writing, read the note into the record with both parties and the jury present, gave the Government and Mack an opportunity to propose supplements, and later docketed the note. These steps easily satisfy the first and fourth *Ronder* requirements. *Id.* Although the court did not mark the note as an exhibit before recalling the jury, it read the note into the record with the parties present and docketed the note, thereby satisfying the purpose of the second *Ronder* requirement—avoiding a later claim that the defendant was unaware of the note's contents. *Id.* Finally, although the court did not afford the parties an opportunity to propose responses to the note before reading back Ripley's and Cowan's direct testimony, it provided an opportunity for the parties to propose supplements to the read-back before allowing the jury to resume its deliberations. Mack does not argue that the court erred in

5

reading back the officers' direct testimony; he argues only that it should have supplemented that testimony by reading back the corresponding parts of the cross-examination, as well. On these facts, we conclude that the court substantially complied with *Ronder* by providing counsel with an opportunity to request supplementation.[2] *See United States v. Ulloa*, 882 F.2d 41, 45 (2d Cir. 1989) ("Mindful that trial judges must be permitted some latitude in determining how best to handle jury inquiries, we have accepted substantial compliance with the *Ronder* procedure.").

Turning to Mack's substantive challenge, we find no abuse of discretion in the district court's decision to read back only the direct testimony of Ripley and Cowan. *See United States v. Khalupsky*, 5 F.4th 279, 294–95 (2d Cir. 2021). The district court reasonably interpreted the jury's request for "testimony of Officer Ripley concerning the order of events getting into the [A]ccord" and "Officer Cowan's testimony of his surveillance and the order of events getting to the [A]ccord," Gov't App'x at 83, as seeking only Ripley's and Cowan's initial narrative of those events, as detailed in their direct testimony. Although it might have been more prudent for the district court to include any portions of the cross-examination that touched on those same subjects, we cannot say that the district court failed to give a "reasonable interpretation" to the jury's note. *Khalupsky*, 5 F.4th at 295. Moreover, the district court appropriately took the precaution of asking the jury to "let us know if there's anything else you need." Dist. Ct. Dkt. 116 at 621–22. Because the jury made no further requests, the district court did not abuse its discretion when it declined to have further testimony read back.

---

[2] To be sure, "[i]t is settled law . . . that counsel should be afforded an opportunity to be heard *before* the trial judge responds." *Id.* (emphasis added). On different facts, substantial compliance with *Ronder* may require the *pre-response* opportunity for counsel to be heard that the procedure envisions. For example, if counsel objects to any testimony being read back at all, a post-readback opportunity to be heard is far less meaningful. But we need not decide the precise demands of substantial compliance with *Ronder* in circumstances where the timing of the opportunity to be heard may be consequential because here, it plainly was not.

Our decision in *United States v. McElroy*, 910 F.2d 1016 (2d Cir. 1990), supports our conclusion that there was no error here. In *McElroy*, the jury submitted a note stating, "We request [one of the defendant's] testimony" and later clarified that it wanted the "[c]ross examination portion of the testimony." *Id.* at 1026. The judge read back the government's cross-examination of the defendant, and the jury confirmed that this was the testimony it sought. *Id.* However, a co-defendant had also cross-examined the defendant and sought to have this cross-examination read back as well. *Id.* The judge refused on the ground that the jury had confirmed that it wanted to hear only the government's cross-examination. *Id.* We affirmed, reasoning that "the trial judge gave [the jury note] a reasonable interpretation in rereading the cross-examination by the government and asking if that was what the jury wished to hear." *Id.* Here, the district court also reasonably interpreted the jury's note and received implicit acknowledgement that it had read back the portion that the jury sought.

We have considered Mack's remaining arguments and find them unpersuasive. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

7